**MUSIC BROADCASTING COMPANY,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COM-
MISSION,** Appellee, Great Trails Broad-
casting Corporation, Intervenor.

**No. 12051.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 5, 1954.

Decided Nov. 18, 1954.

Wilbur K. Miller, Circuit Judge, dis-
sented as to jurisdiction to entertain ap-
peal.

Mr. Paul Dobin, New York City, with whom Mr. Leonard H. Marks, Washington, D. C., was on the brief, for appellant.

Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, Washington, D. C., with whom Messrs. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., and Richard J. Snider, Counsel, Federal Communications Commission, Houston, Tex., were on the brief, for appellee.

Messrs. J. Roger Wollenberg, Washington, D. C., and Stanley S. Neustadt, Counsel, Federal Communications Commission, New York City, entered appearances for appellee.

Mr. Harrison T. Slaughter, Washington, D. C., for intervenor. Mr. Harold D. Cohen, Washington, D. C., appeared on the brief for intervenor.

Before EDGERTON, WILBUR K. MILLER and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

A standard broadcast station, licensed to operate only between local sunrise and local sunset, is permitted by a rule of the Federal Communications Commission also to broadcast between 4:00 a.m. and sunrise.[1] The permission to do so is qualified, however, by the provision that, upon notice from the Commission that undue interference is being caused, the daytime station must refrain from such pre-sunrise operation pending further notice from the regulatory body.

Music Broadcasting Company is licensed to operate a standard broadcast station, WGRD, at Grand Rapids, Michigan, on 1410 kc, with 1 kw power, daytime only. It has from its inception broadcast also before sunrise pursuant to the rule to which we have referred. Great Trails Broadcasting Corporation is licensed to operate Station WING at Dayton, Ohio, on 1410 kc, with 5 kw power, unlimited time. It begins broadcasting at 5:00 a.m. on weekdays and 7:00 a.m. on Sundays. November 16, 1953, Great Trails telegraphed the Commission that it was receiving "serious and undue interference" from the pre-sunrise operation of Station WGRD. The following day the Commission telegraphed Music to refrain from broadcasting before sunrise.

---

1. Section 3.87 of the Rules and Regulations of the Commission (1 Pike & Fischer R. R. 53:242) is as follows:

"§ 3.87 Program transmission prior to local sunrise.—(a) The provisions of §§ 3.6, 3.8, 3.9, 3.10, 3.23, 3.79 and 3.84 shall not prevent the transmission of programs between four o'clock a. m., local standard time, and local sunrise, all standard broadcast stations with their authorized daytime facilities: provided, that the provisions of this rule shall not extend to:

"(1) Stations regularly sharing time during daytime hours either under licenses pursuant to which time-sharing agreements have been entered into or licenses specifying hours of operation, unless time-sharing agreements have been reached covering such operation prior to local sunrise. Sections 3.74, 3.77 and 3.78 of these rules shall be applicable to such agreements.

"(2) Any Class II station causing interference by use of its daytime facilities within the 0.5 mv/m 50% skywave contour of any Class I station either of the United States or of any country party to the North American Regional Broadcasting Agreement, except (a) where the Class I station is located east of the Class II station in which case operation may begin at local sunrise at the Class I station; (b) where an agreement has been reached with the Class I station to begin operation prior to local sunrise.

"(3) Operation by use of its daytime facilities of any Class II station on any Class I–A channel not assigned to the United States under the North American Regional Broadcasting Agreement.

"(b) Any station operating during such hours receiving notice from the Commission that undue interference is caused shall refrain from such operation during such hours pending further notice from the Commission.

"(c) Nothing contained in outstanding instruments of authorization for such stations shall prohibit such operation except as herein provided.

"(d) The period 4:00 a. m. to 6:00 a. m., local standard time, shall not be included in determining compliance with § 3.71 of these rules."

December 7, 1953, Music petitioned the Commission to withdraw its telegraphic order of November 17 and also asked

"* * * that if further inquiry into the matters raised here is warranted, that appropriate procedures be instituted consistent with the due process clause of the Constitution, Section 9(b) of the Administrative Procedure Act and Section 316 of the Communications Act of 1934 as amended."

In response to this petition the Commission entered December 28, 1953, an order, which is in part as follows:

"* * * It Is Ordered, this 28th day of December, 1953, That in accordance with Section 3.87(b) of the Commission's Rules and Regulations, Music Broadcasting Company, licensee of Station WGRD, Grand Rapids, Michigan, refrain from operating during hours prior to local sunrise at Grand Rapids in accordance with the terms of its license until further notice from this Commission; and

* * * * * *

"It Is Further Ordered, That this prohibition shall become permanent at the expiration of thirty days from the service of this order unless within the thirty day period Music Broadcasting Company shall request an evidentiary hearing on any issues of fact or an oral argument before the Commission on any issues of law or policy which bear upon the ultimate question whether this prohibition should be made permanent; and

"It Is Further Ordered, That in the event that a hearing or oral argument is designated, Music Broadcasting Company shall refrain from operating during hours prior to local sunrise at Grand Rapids in accordance with the terms of its license until the Commission issues a final decision after said hearing or oral argument as to whether this prohibition shall or shall not become permanent."

December 30, 1953, Music petitioned the Commission to stay its order of December 28 "pending the further procedures contemplated" therein. The Commission's order of January 7, 1954, denying the petition for a stay included the following recitals:

"* * * As a matter of discretion the Commission concluded to afford WGRD the opportunity to request an evidentiary hearing in the event it has relevant factual material to urge, or an oral argument for the presentation of legal and policy questions. The procedure provided will permit WGRD to present any new material or arguments to the Commission before a decision is reached as to making the order permanent. This provision for possible further review does not, however, mean that WGRD should be permitted to continue its undue interference in the interim. We note in this connection that there has been no showing of irreparable harm to WGRD, and that we are not persuaded that the public will be irreparably injured by the loss of WGRD's services during the few pre-sunrise hours here involved."

Music Broadcasting Company appeals from the orders of December 28, 1953, and January 7, 1954, purportedly pursuant to § 402(b) (5) of the Communications Act of 1934, as amended, 47 U.S. C.A. § 402(b) (5). It contends it has a license to operate from 4:00 a.m. to sunrise[2] and that the orders appealed

---

2. Music seems to think of its pre-sunrise authorization is a license separate from its station license, which authorizes operation only from local sunrise to local sunset. The Commission thinks it "more realistic" to consider the privilege of broadcasting before sunrise as "but one part of a single overall license authorization for the operation of Music's station." For the purposes of this appeal we see no difference. The question simply is whether Music's authorization to operate from 4:00 a. m. to sunrise has been modified, withdrawn, suspended, revoked or annulled by the two orders in question.

from constitute a modification of that license within the meaning of § 316 of the Communications Act, or a "withdrawal, suspension, revocation, or annulment of any license" within the meaning of § 9(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1008(b), requiring the procedures laid down by those sections to be utilized. It was improper, says Music, for the Commission to order it to cease pre-sunrise operation without considering the nature of the program service rendered by it during pre-sunrise hours and without comparing its service with that provided by Great Trails.

■■ A majority of the court is of the opinion that we have jurisdiction to entertain this appeal. We therefore consider whether the orders appealed from actually modify the authority granted to Music to operate before sunrise. The essence of Music's position seems to be that § 3.87 of the Rules transforms its station license to operate from local sunrise to local sunset into an absolute authority to operate from 4:00 a.m. to local sunset. The position is untenable in view of paragraph (3) (b) of § 3.87, which provides:

"Any station operating during such [i.e., pre-sunrise] hours receiving notice from the Commission that undue interference is caused shall refrain from such operation during such hours pending further notice from the Commission."

■ Thus the rule permits pre-sunrise operation by stations actually licensed only for daytime hours not unqualifiedly, as Music would have it, but subject to the condition that the additional operation must not unduly interfere with stations licensed for unlimited time. It is therefore clear that Music has never had an absolute unqualified right to broadcast from 4:00 a.m. to sunrise. Its only right with respect to those hours has been to operate until it receives notice from the Commission that it is causing undue interference. When the notice

came, it had the right to demand and receive a hearing as to whether it was in fact causing such interference.[3] But that is not the type of hearing appellant seeks. It concedes its pre-sunrise operation objectionably interferes with Great Trails' operation during that period; but claims its objectionable interference cannot be held to be "undue" within the meaning of the rule, unless and until it has been determined in a comparative hearing that the public interest requires Great Trails' operation during the disputed hours instead of its own.

■ We cannot accept appellant's distinction between the words "objectionable" and "undue." When a daytime station's conditionally-permitted early operation objectionably interferes with another station which is unconditionally licensed to operate before sunrise, such interference is "undue." Music's concession in oral argument that its pre-sunrise operation interferes objectionably with Great Trails, is, therefore, in effect a concession that its early operation causes undue interference. That being true, Music is not authorized by § 3.87 of the Rules to operate during the pre-sunrise period. Since the Commission has merely required the appellant to operate within the terms of its authorization, the orders appealed from cannot be said to constitute a modification thereof. We are unanimous in affirming on this ground.

I would dismiss at the threshold without reaching the merits, as I do not share the view of my brothers Edgerton and Fahy that we have jurisdiction to entertain this appeal. The record before us shows the Commission has not entered a final order directing Music to refrain from broadcasting before sunrise. To the contrary, its orders by their terms show they are temporary and tentative. They provide that upon Music's request it will be afforded an evidentiary hearing as to whether the temporary suspension of its pre-sunrise service should be made

3. This seems implicit in paragraph (3) (b), which requires cessation, after notice of interference, "pending further notice from the Commission."

permanent. Nothing in the record certified to us by the Commission clearly shows whether Music requested such a hearing and what the result was if a hearing was had.[4]

Thus the two orders of which Music complains are interlocutory. They fall far short, in my opinion, of being nevertheless appealable under the "impact" rule of Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51. That being true, I think it is our duty to recognize our lack of jurisdiction and, *sua sponte*, to dismiss this appeal on that ground. Southland Industries v. Federal Communications Commission, 1938, 69 App.D.C. 82, 99 F.2d 117.

Affirmed.

---

4. We are told informally in the Commission's brief, filed May 13, 1954, that the Commission entered an order April 28, 1954, setting the case for oral argument June 4, 1954, on the question whether Music should be permanently prohibited from operating before local sunrise. As an appendix to its brief the Commission set forth at length what appears to be the order referred to, together with a memorandum opinion preceding it. This

material is not properly before us as it is not a part of the record.

Supplemental memoranda filed on the jurisdictional questions tell us the Commission hearing as to whether the ban on Music's early broadcasting should be made permanent has been postponed until after we have disposed of this appeal. If this information were shown by the record, it would emphatically demonstrate the interlocutory nature of the orders before us.