257 F.2d 630
 103 U.S.App.D.C. 252
 CAPITOL BROADCASTING COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Supreme
Broadcasting Company, Inc., Intervenor.
OKLAHOMA TELEVISION CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Supreme
Broadcasting Company, Inc., Intervenor.
 Nos. 14034, 14162, 14043, 14160.
 United States Court of Appeals District of Columbia Circuit.
 Argued Feb. 7, 1958.
Decided May 22, 1958, Petitions for Rehearing Denied Sept. 12, 1958.
 
 Mr. Aloysius B. McCabe, Washington, D.C., with whom Messrs. Reed T. Rollo and Kelley E. Griffith, Washington, D.C., were on the brief, for appellant in Nos. 14034 and 14162.
 Mr. Robert L. Heald, Washington, D.C., with whom Messrs. Frank Roberson, Frank U. Fletcher and Russell Rowell, Washington, D.C., were on the brief, for appellant in Nos. 14043 and 14160.
 Mr. Charles C. McCarter, Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, General Counsel, Federal Communications Commission, and Richard A. Solomon, Asst. General Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. John J. O'Malley, Jr., Counsel, Federal Communications Commission, also entered an appearance for appellee in No. 14043.
 Mr. Vernon L. Wilkinson, Washington, D.C., with whom Mr. James A. McKenna, Jr., Washington, D.C., was on the brief, for intervenor.
 Before EDGERTON, Chief Judge, and BAZELON and DANAHER, Circuit judges.
 EDGERTON, Chief Judge.
 
 
 1
 Capitol Broadcasting Company (Capitol) and Oklahoma Television Corporation (Oklahoma) appeal from grants by the Federal Communications Commission to Supreme Broadcasting Company, Inc. (Supreme), without hearing, of applications for (1) an experimental television authorization and (2) modification of a construction permit.
 
 
 2
 In March 1957 the Commission assigned VHF Channel 12 for commercial television to New Orleans, where Supreme operates on UHF Channel 20. Supreme asked and the Commission denied a change in its authorization from 20 to 12. (16 Pike & Fischer 1603, 1612.) Supreme then filed a 'Petition for Temporary Authority' to commence commercial operation on Channel 12 'pending any further action that may be required respecting the regular use of Channel 12 in New Orleans by (Supreme) or any other interested applicant.' While this petition for temporary commercial authority was pending, Supreme applied for a construction permit for an 'experimental' station, with authority to transmit simultaneously on Channel 12, for at least a year, the entire commercial and sustaining program of Supreme's Channel 20 station, in order to compare simultaneous transmissions from the same site and to determine the effectiveness of precision offset techniques, with a directive antenna, in minimizing interference to other stations.
 
 
 3
 In conformity with the Commission's rules for minimum separation between co-channel stations, the order allocating Channel 12 to New Orleans specified that any Channel 12 transmitter at New Orleans must be at least 190 miles from Capitol's Channel 12 transmitter at Jackson, Mississippi. New Orleans Deintermixture Case, 15 Pike & Fischer 1603, 1609, Para. 14. But Supreme's 'experimental' application showed that Supreme's transmitter would be only 162 miles from Capitol's. Capitol for that reason among others; Oklahoma, a competing applicant for Channel 12 at New Orleans; and other parties, opposed Supreme's 'experimental' application. Yet the Commission granted the application and also a construction permit, without hearing, on June 27, 1957. In July 1957 the Commission ordered Capitol to show cause why its authorization should not be temporarily modified so far as necessary to permit Supreme's 'experimental' operation, and denied, without hearing, the petitions of the parties opposing the grant to Supreme. This Court denied motions of Capitol and Oklahoma for a stay, and Supreme proceeded with construction of its 'experimental' station.
 
 
 4
 On August 30, Supreme applied to the Commission for license and program authority. The Commission returned the application as varying from the construction permit. Supreme then applied for modification of its 'experimental' construction permit. Capitol petitioned to dismiss this application or set it for hearing. Oklahoma also petitioned for a hearing. On September 30, 1957 the Commission, without a hearing, denied these petitions, granted the modified construction permit, and granted program test authority.
 
 
 5
 It is not disputed that the Commission may license experimental stations in order to study the relative propagation characteristics of UHF and VHF and the effects of special equipment. But Capitol and Oklahoma contend the grants to Supreme without hearing were arbitrary and capricious. Capitol's opposition to the original 'experimental' grant is based on substantially these allegations among others:(1) Supreme's application was on its face inconsistent with the Commission's rules for experimental stations in that it (a) violated the minimum separation requirement; (b) did not show that wholesale duplication of an existing commercial station's programs was necessary to the experiment; and (c) showed that a purpose of the application was to enable Supreme to continue full-time UHF operation with the aid of income to be derived from VHF operation and from a resulting affiliation with ABC. Section 4.182 of the Commission's Rules provides: 'No charges, either direct or indirect, shall be made by the licensee of an experimental television broadcast station for the production or transmission of either aural or visual programs transmitted by such station * * *.'
 
 
 6
 (2) The application was, in substance, for the regular commercial television operation in New Orleans for which Supreme had already applied.
 
 
 7
 The Association of Maximum Service Telecasters, Inc., added an allegation that Supreme had incorrectly informed the Commission that the application had been approved by the Television Allocations Study Committee.
 
 
 8
 Objections to the Commission's grant of Supreme's application to modify its construction permit were based on the related allegations that:
 
 
 9
 (1) Supreme sought to modify features on which the Commission had relied in granting the original application.
 
 
 10
 (2) Supreme showed rate increases on a card dated March 1, 1957, but not released to the industry until September 6, 1957, one week after Supreme's first attempt to obtain VHF program authority.
 
 
 11
 (3) By soliciting business on the basis of a VHF operation and a resulting ABC affiliation, and by advertising that it will 'soon * * * become the nation's first VHF-UHF station operating simultaneously on both Channel 12 and Channel 20' and delivering 'VHF coverage at UHF rates', Supreme violated a condition attached to its 'experimental' grant, namely that it would 'avoid any action which would create the impression that WJMR-TV is operating or will be authorized to operate on Channel 12.'
 
 
 12
 The Commission says both its grants to Supreme are valid and that neither Capitol nor Oklahoma has standing to object to them.
 
 
 13
 Capitol contends the grants have modified its license as a matter of law. Part IV of the Commission's regulations, which deals with experimental stations, does not define objectionable interference, but does provide in 4.131(c) that 'A license for an experimental television broadcast station will be issued only on the condition that no objectionable interference will result from the transmissions of the station to the regular program transmissions of television broadcast stations. * * *' Section 3.610(b) specifies the minimum mileage separations between co-channel stations. By 3.612, the 'nature and extent of the protection from interference accorded to television broadcast stations is limited solely to the protection which results from the minimum assignment and station separation requirements and the rules with respect to maximum powers and antenna heights set forth in this subpart.' The Commission contends that an experimental station need not comply with the minimum station separation requirements if power and antenna height are so much less than the permissible maxima that the station causes no more interference than it would if all requirements were met.
 
 
 14
 The Commission concedes this would not be true of a standard broadcast station. We need not consider whether it would be true of a bona fide experimental station. In view of Capitol's allegations tending to show that Supreme was not proposing a bona fide experiment, we think the Commission erred in granting the applications without hearing.
 
 
 15
 We agree with the Commission that Oklahoma lacks standing, Peoples Broadcasting Co. v. United States, 93 U.S.App.D.C. 78, 209 F.2d 286.
 
 
 16
 Nos. 14034 and 14162 reversed.
 
 
 17
 Nos. 14043 and 14160 dismissed.
 
 
 18
 DANAHER, Circuit Judge (dissenting).
 
 
 19
 I quite agree that Oklahoma lacks standing, as my colleagues have ruled, but I dissent otherwise.
 
 
 20
 The situation presented is a by-product of the vexatious problem of 'intermixture' and 'de-intermixture' of VHF and UHF, various aspects of which previously have been presented to us. On June 26, 1956, following a general rule-making proceeding, the Commission issued a Report and Order (13 RR 1571) asserting that UHF and VHF could not effectively compete in the same area and that the 1952 intermixture policy had proved mistaken. The Commission considered making New Orleans all UHF. It also explored the objective of making the area all VHF.
 
 
 21
 After receipt of comments in the rule-making proceeding, the Commission finally decided on March 7, 1957, that a third VHF service, Channel 12, could be added at New Orleans, its site to be located some 30 miles south of New Orleans, with a tower of 2,000 feet and power of 316 kw. No objection was raised to the Commission's order. Capitol took no appeal.
 
 
 22
 Supreme Broadcasting Company, Inc., intervenor here, applied for authority to construct an experimental television station on Channel 12, designed to test the feasibility of use of a directional antenna to limit radiation and to provide a basis for comparative coverage studies of picture quality. To such ends, it proposed experimentally to transmit VHF programs simultaneously with its regular UHF programs on UHF Channel 20 from its already existing site in New Orleans.
 
 
 23
 That site is some 162 miles from Jackson, Mississippi, where appellant, Capitol Broadcasting Company, operates WJTV. Capitol opposed the experimental grant charging possible interference on the basis of intervenor's original proposal for a tower of 312.5 feet and a radiation of 40 kw toward Jackson.
 
 
 24
 But the Commission authorized a tower of only 262.5 feet above ground and power of only 31 kw. Capitol has never filed engineering affidavits regarding the extent of interference from the lower antenna and reduced power as specified in the modified experimental grant. The Commission in prescribing this modified operating authority determined, and specifically found, that there would be no objectionable interference to WJTV. By the lowered differential in tower height and power and other engineering techniques, the Commission made allowance for the thirty mile difference between New Orleans and the previously authorized Channel 12 site if operated at maximum height and power. In any event, the 190 mile separation rule applied only to commercial stations-- not to the experimental program here contemplated.
 
 
 25
 Moreover, although intervenor's experimental operations commenced on September 30, 1957, there has been no suggestion on this record, or otherwise so far as we are advised, that Capitol has made any claim of actual interference to the operations of WJTV. In addition, even while these appeals have been pending, Capitol has been accorded a hearing by the Commission to determine whethr or not the experimental operations are causing interference to WJTV. If WJTV is shown to be suffering, the Commission may cancel the experimental authorization 'without further notice or hearing,' as one of the conditions for the authorization expressly provided.[1]
 
 
 26
 The Communications Act of 1934 by 47 U.S.C.A. 303(g) provides that the Commission is duty bound to 'study new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest.' It is the Commission's burden to determine the composition of the traffic. It has acted here pursuant to Congressional mandate.[2] It is the one body in our system charged with regulation of this field. In its expertise, it decided by its order of July 15, 1957, that intervenor's proposed experimental operation would not result in objectionable interference to Capitol's WJTV.
 
 
 27
 The Commission imposed eight conditions upon the temporary authorization, and not only made certain of termination of intervenor's operation for interference, if any should develop, but expressly specified that the grant was for experimental purposes only. In addition it has been provided that in any later comparative hearing involving applications for regular commercial operations on Channel 12, should they be found feasible, no preference is to be accorded to the intervenor by virtue of the experiment.
 
 
 28
 It is difficult to imagine a field in which the court is less competent or the Commission more so than in making a simultaneous comparison of the field intensities of UHF and VHF signals transmitted from a single site over a common path. In an area where a substantial percentage of the viewing public has UHF sets while neighbors have VHF sets, an immediate comparison can be made of the reception of the identical programs telecast at the same time. If interference should develop, the operation ceases; if none appears, WJTV has no cause for complaint. Much can be learned in any event.
 
 
 29
 Results may well be obtained which will go far toward a resolution of the whole intermixture conflict. I think the Commission should be encouraged, not thwarted, in its effort. I think the court should not substitute its judgment for that of the expert body whose duty it is to administer a complicated administrative task in a difficult and important field. We should be loathe to interfere with the Commission's conclusions as shown in the present record, when , as here, they are reconcilable with the directions of the statute.[3] The majority, as I see it, would here fly directly into the holding of this court, sitting en banc, in Coastal Bend Television Co. v. Federal Communications Comm.,[4] and I therefore dissent.
 
 
 
 [1]
 The legal authority of the Commission so to act has been upheld by this court. Music Broadcasting Co. v. Federal Communications Comm., 1954, 95 U.S.App.D.C. 12, 217 F.2d 339
 
 
 [2]
 National Broadcasting Co. v. U.S., 1943, 319 U.S. 190, 216, 63 S.Ct. 997, 87 L.Ed. 1344
 
 
 [3]
 United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 203, 76 S.Ct. 763, 100 L.Ed. 1081; Federal Communications Comm. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 144-145, 60 S.Ct. 437, 84 L.Ed. 656
 
 
 [4]
 956, 98 U.S.App.D.C. 251, 255, 234 F.2d 686, 690; cf. Mr. Justice Reed's dissentin Midwestern Gas Transmission Co. v. Federal Power Commission, 1958, 103 U.S.App.D.C. , 258 F.2d 660